[No. D004405. Fourth Dist., Div. One. June 9, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
RICHARD VINCENT MAYES, Defendant and Appellant.

COUNSEL

Allen R. Bloom, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Michael D. Wellington and Lilia E. Garcia, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

WIENER, J.—Defendant Richard Vincent Mayes appeals from a judgment of conviction entered on jury verdicts finding him guilty of two counts of robbery (Pen. Code, §§ 211/211a)[1] and one count of kidnapping (§ 207) as a lesser included offense of kidnapping for the purpose of robbery (§ 209, subd. (b)) and finding affirmatively on the allegation he personally used a firearm in the commission of the second robbery and kidnapping (§ 12022.5). The court sentenced Mayes to 19 years in prison. In addition to challenging various rulings made during the criminal trial and sentencing, Mayes contends he was denied due process in section 1368 proceedings to determine his competency to stand trial. We reverse.

FACTUAL AND PROCEDURAL BACKGROUND

A

In May 1985 an information charged Mayes with the robberies of two taxicab drivers, Ronald Ellis and Brian Royal (counts I and II). A third count charged Mayes with the kidnapping of Royal for the purpose of robbery. Counts IV, V and VI charged Mayes with attempted murder and assault with a deadly weapon in a separate incident involving a third taxicab driver. Mayes successfully moved to sever counts IV and V. Count VI was dismissed.

---

[1] All statutory references are to the Penal Code unless otherwise specified.

B

The case was assigned out for trial on December 10, 1985. After the proceedings commenced, Mayes made several verbal outbursts. The court asked the bailiff to silence him. The bailiff applied a sleeper hold and finally removed Mayes from the courtroom. Mayes was later taken to the hospital. The court continued the criminal proceedings and ordered Mayes to undergo a section 1368 examination by a psychiatrist the next morning to determine his competency to stand trial.

The court convened on Wednesday, December 11, 1985, to make an initial competency evaluation. Mayes appeared wearing a cervical collar. Bernard Hansen, a psychiatrist employed by the County of San Diego, testified he had been unable to complete his examination of Mayes. He spent a total of five or six minutes with the defendant during which time Mayes's only words were "My lawyer told me not to talk to nobody" and "Can we go now?" The court continued to question Dr. Hansen: "Q. [By the court] Were you able to form any opinion as to his present mental competence to stand trial?

"A. Well, he—the few words he spoke didn't show any evidence of blocking or tangential thinking. Certainly, his facial expression did not look like he was bewildered or perplexed. He moved with good coordination. Didn't look like he was having any problems physically or with psycho motor control.

"Q. Before we get to the reasoning behind it, did you form any opinion?

"A. Yes, I did form an opinion.

"Q. And the opinion is?

"A. I felt he was mainly being uncooperative."

The clear inference from Hansen's brief testimony was that Mayes was competent and merely uncooperative. Shortly after defense counsel began to question Dr. Hansen, the transcript recounts the following: "Q. [By Mr. Bloom] Do you know anything about Mr. Mayes' psychiatric history?

"A. I have read the reports about his behavior. I don't know much about his psychiatric history. He was examined at one of the correctional facilities, but I don't have that report with me. I didn't—in this package of material.

"(The bailiffs are examining the defendant)

"The bailiff: Your honor, we are having some problems with him. He is starting to slip in and out. His eyes—

"The court: Perhaps, we can shorten the procedure here. Mr. Bloom, a trial on the question of mental competency is to be had; do you wish the trial to be by jury or by court?"

The court set a jury trial on Mayes's competency for Monday, December 16.

On December 13 defense counsel informed the court he had been unable to find a mental health expert to examine Mayes on such short notice and requested a three-week continuance. The court denied the request for continuance pointing out that Dr. Hansen was available and "the fact that Mr. Mayes chose not to be cooperative with that psychiatrist is not the court's fault." The court stated that to give Mayes a psychiatrist of his choice "violates the statutory scheme . . . [and] exacerbates the costs to the people of the State of California, . . ."

Defense counsel immediately filed a petition for writ of prohibition and stay of proceedings. (*Mayes* v. *Superior Court*, D003972.) We issued the stay.

C

On December 16 the court granted Mayes's request for continuance and set the competency trial for January 13, 1986. However, the court stated it would not authorize payment of taxpayers' money for another psychiatrist because it had already appointed Dr. Hansen. It initially refused to authorize defense counsel to solicit other psychiatrists or psychologists. The court then explained: "If your client wishes to hire an expert, that's fine. You can hire all the experts you wish or bring in anybody you wish. I'm simply suggesting—in fact, I'm saying that the court is not going to approve the expenditure of taxpayers' money for your client to pick and choose any psychiatrist he wants." Moments later the bailiffs gagged and removed Mayes from the courtroom because he persisted in interrupting the proceedings.

The court and defense counsel continued their discussion of expert witnesses in Mayes's absence. Defense counsel explained he would obtain an expert through the Office of Defense Services and would not seek payment directly through the court. The following exchange then occurred between

the court and defense counsel: "[Mr. Bloom:] Is the court ordering me at this point not to go to the Office of Defense Services to request fees so I may retain a mental health expert to examine Mr. Mayes? I wasn't sure if that was—

"The Court: I'm suggesting that the court is not going to allow an expert to testify that is paid for by the taxpayers other than Dr. Hansen.

"Mr. Bloom: All right, so the court isn't stopping me from getting such an expert even through the Office of Defense Services, but the court is saying it won't allow such an expert to testify?

"The Court: That's what I'm saying."

The court minutes reflect the court's order that "the defendant shall not be allowed to call as a witness experts other than Dr. Hansen unless defendant cooperates with Dr. Hansen."

Defense counsel again sought extraordinary relief, this time unsuccessfully. (*Mayes* v. *Superior Court,* D004009.) We concluded the order did not deny Mayes the opportunity to present his own expert: "The order is uncertain as to content and meaning. As reasonably interpreted by us, the order allows Mayes's expert to testify without Mayes cooperating with Dr. Hansen. As so interpreted, the petition is denied." (Order dated Jan. 10, 1986.)

### D

The competency trial began on January 22 with jury selection and continued on January 23 with the examination of witnesses, jury instructions, argument, jury deliberation and verdict. Before jury selection began on January 22, defense counsel asked for clarification of the court's earlier order regarding testimony by a psychiatric expert other than Dr. Hansen. The court stated the issue was an evidentiary matter which would be taken up before opening statements the next day.

When the issue was raised again the next day, the court acknowledged its difficulty in interpreting our order. "I'm satisfied that the reasonable interpretation . . . is that the order allows Mr. Mayes' expert to testify without Mayes cooperating with Dr. Hansen, and the only rational explanation I can come up with is that Mayes' expert is Dr. Hansen because the order that I made was very specific." Because of Mayes's refusal to cooperate with Dr. Hansen and in light of his declaration in open court that he would not talk to anyone other than a Black person, the court concluded that to allow him to call a psychiatrist of his own choosing "would be tantamount to

giving him the authority to appoint his own psychiatrist." The court continued: "Accordingly, the court's ruling is that in his case in chief, he may only call as a psychiatrist Dr. Hansen. Now, the code section also provides that each party may offer rebutting testimony. It may be—I don't don't know because I haven't heard any of the evidence at all, but it may be that if the prosecution puts in some evidence which requires rebutting, that such an expert would be available for that purpose, but again, we're premature on that issue because I don't know. I haven't heard any of the evidence nor any suggestion as to what would be forthcoming that would require rebutting."

In order to establish Mayes's incompetence his counsel called Mayes's mother and Dr. Hansen as witnesses.[2] At the close of the section 1368 trial, the jury found Mayes competent to stand trial.

## DISCUSSION

■    The conviction of an accused person while he is legally incompetent violates due process. (§ 1367; *Pate* v. *Robinson* (1966) 383 U.S. 375, 378 [15 L.Ed.2d 815, 818, 86 S.Ct. 836]; *People* v. *Hale* (1988) 44 Cal.3d 531, 539 [244 Cal.Rptr. 114, 749 P.2d 769]; *People* v. *Laudermilk* (1967) 67 Cal.2d 272, 282 [61 Cal.Rptr. 644, 431 P.2d 228].)   ■    The error is jurisdictional in the sense the court lacks the power to render judgment in such a case. (*People* v. *Laudermilk, supra,* 67 Cal.2d at p. 282; *People* v. *Sundberg* (1981) 124 Cal.App.3d 944, 956 [177 Cal.Rptr. 734].)

■    For more than 100 years California has recognized the need to safeguard the rights of incompetent persons in the criminal justice system. Sections 1367, 1368 and 1369, which provide for inquiry into the competence of the defendant before trial, were enacted in 1982 and are an "affirmation of common-law rules forbidding proceedings against one who is mentally deranged to such an extent as to be incapable of appreciating his situation and making any legal defense that he may have." (*People* v. *Lawson* (1918) 178 Cal. 722, 726 [174 P. 885].)

Section 1368 hearings are characterized as "special proceedings of a civil nature which [are] collateral to the criminal proceeding . . . ." (*Posner* v. *Superior Court* (1980) 107 Cal.App.3d 928, 932 [166 Cal.Rptr. 123]; *People* v. *Fields* (1965) 62 Cal.2d 538, 540 [399 P.2d 369, 16 A.L.R.3d 708].) Under section 1368 the defendant is not charged with a criminal act and is not subject to criminal sanctions if found mentally incompetent. (*People* v. *Fields, supra,* 62 Cal.2d at p. 540.) Although described as "collateral to the

---

[2] Although the court ruled Hansen was the only expert Mayes could call in his case-in-chief, we have some question as to why he was, in fact, called to testify given his earlier testimony suggesting Mayes was competent and merely uncooperative. (See pp. 910-911, *ante.*)

criminal proceeding," where circumstances require a trial under section 1368, that trial in fact becomes an integral part of the criminal process with serious consequences for the defendant. (See e.g., *People* v. *Hale, supra,* 44 Cal.3d 531.) If the defendant is found mentally competent, the criminal process may resume immediately. On the other hand, if the defendant is found to be mentally incompetent, criminal proceedings are suspended until the person becomes mentally competent. In the interim, the defendant may face commitment to a state hospital or other treatment facility for a significant period of time. (§ 1370.) Due process is essential.

Under the statutory scheme mental competency proceedings involve two distinct steps: (1) initiation of the section 1368 proceedings and suspension of the criminal trial; and (2) actual trial of the competency issue.

The court may initiate section 1368 proceedings if "a doubt arises in the mind of the judge as to the mental competence of the defendant, . . ." (§ 1368, subd. (a).) The court may base its doubt on the defendant's conduct or information obtained from counsel or a third person. (See *People* v. *Merkouris* (1959) 52 Cal.2d 672, 679 [344 P.2d 1], disapproved on other grounds in *People* v. *Pennington* (1967) 66 Cal.2d 508, 518 [58 Cal.Rptr. 374, 426 P.2d 942].) When the court is presented with substantial evidence of present mental incompetence, the defendant is entitled to a section 1368 hearing as a matter of right under *Pate* v. *Robinson, supra,* 383 U. S. 375. (*People* v. *Pennington, supra,* 66 Cal.2d 508, 518.)

Here the court requested a psychiatric examination following a disturbance in the courtroom which resulted in the bailiff placing Mayes in a sleeper hold.[3] Because Mayes also wanted to establish his incompetence to stand trial, the court was only required to appoint one mental health expert to examine the defendant. (§ 1369, subd. (a).) The court suspended the criminal proceedings and ordered a trial on the question of mental competency when Mayes became unconscious during questioning of the psychiatrist in court the following day. At that juncture the court must have concluded from Mayes's conduct that there was substantial evidence casting doubt on Mayes's present mental competency—in spite of Hansen's testimony that Mayes was simply uncooperative.

---

[3] Section 1369, subdivision (a), provides that as part of the trial proceedings "[t]he court shall appoint a psychiatrist or licensed psychologist, and any other expert the court may deem appropriate, to examine the defendant." In this case the court referred Mayes for the psychiatric examination at an earlier stage in the competency proceeding to assist in determining whether doubt existed as to Mayes's competency to stand trial. Such a procedure is authorized under Evidence Code section 730. (See also *People* v. *Laudermilk, supra,* 67 Cal.2d at pp. 274-278.)

Section 1369 details the procedure for section 1368 trials as follows: "(b)(1) The counsel for the defendant shall offer evidence in support of the allegation of mental incompetence.

"(2) If the defense declines to offer any evidence in support of the allegation of mental incompetence, the prosecution may do so.

"(c) The prosecution shall present its case regarding the issue of defendant's present mental competence.

"(d) Each party may offer rebutting testimony, unless the court, for good reason in furtherance of justice, also permits other evidence in support of the original contention.

"(e) When the evidence is concluded, unless the case is submitted without final argument, the prosecution shall makes its final argument and the defense shall conclude with its final argument to the court or jury." The question of competency may be decided by the court or jury. (§ 1369.) The defendant is presumed mentally competent unless he is proved incompetent by a preponderance of the evidence. The verdict of the jury must be unanimous. (§ 1369, subd. (f).)

■ Mayes asserts he was denied due process at his competency trial because he was not allowed to present the testimony of his own psychiatrist in addition to the testimony of the court-appointed psychiatrist.[4]

We have carefully detailed the procedural background and statutory framework to emphasize this is not a case where the court was merely dealing with the order of proof. This is a preclusion of evidence case presenting a fundamental question of due process. Given the presumption of competence, Mayes was required to establish his incompetency in his case-in-chief. It was not enough that the court left open the possibility that Mayes could present his expert in rebuttal.[5]

---

[4] We note the Attorney General misreads Mayes's argument in two important respects. Mayes never asked that the court appoint a second psychiatrist under section 1369, subdivision (a) at taxpayers' expense for the purpose of determining his competency to stand trial. Nor does Mayes assert he was denied an opportunity to present a defense because he was denied access to public funds to appoint a second psychiatrist. Mayes represents he did, in fact, obtain public funds to retain a psychiatrist without any assistance from the trial court.

[5] The court "clarified" its earlier rulings and raised the possibility of defense counsel presenting expert testimony in rebuttal at approximately 9:30 a.m. on the day of trial. Its previous rulings had made clear Mayes would not be allowed to present the testimony of any mental health expert obtained with public funds at any point in the trial. It would have been unrealistic to expect defense counsel to arrange for the appearance of its expert on rebuttal on such short notice. In these circumstances defense counsel was not required to make an offer of proof as to the expert's testimony.

We begin by carefully reviewing each of the court's orders. The court placed various conditions on Mayes's presentation of expert testimony at different points in the December 16 proceeding in violation of Mayes's due process rights. The court first stated it would not authorize the payment of taxpayers' money for a second psychiatrist. It then stated defense counsel could talk with a mental health expert obtained with Office of Defense Services funds, but conditioned the admission of testimony by any such expert on Mayes's cooperation with Dr. Hansen. Defense counsel was also told Mayes could hire and bring in anybody he wished so long as it did not involve the expenditure of public funds. These rulings contradict the fundamental notion that the rights accorded criminal defendants should not turn on wealth. (See *Gideon* v. *Wainwright* (1963) 372 U.S. 335 [9 L.Ed.2d 799, 83 S.Ct. 792, 93 A.L.R.2d 733] (right to appointed counsel); *Griffin* v. *Illinois* (1956) 351 U.S. 12 [100 L.Ed. 891, 76 S.Ct. 585, 55 A.L.R.2d 1055] (right to free transcript on appeal).)

We interpreted the trial court's December 16, 1985, order as allowing Mayes's expert to testify without Mayes cooperating with Dr. Hansen (*Mayes* v. *Superior Court,* D004009, order dated Jan. 10, 1986) because we thought it unlikely that a trial judge would deprive a defendant of a material witness in a section 1368 proceeding as an economic sanction for failing to cooperate with a court-appointed psychiatrist. In retrospect our earlier ruling may have lacked clarity and should have been more specific. On January 23 the court again limited Mayes's presentation of expert testimony and ruled that he could call only the court-appointed expert, Dr. Hansen, in his case-in-chief.

There is also no merit to the court's concern that allowing Mayes to call an expert of his own choosing in the face of his failure to cooperate with the court-appointed psychiatrist was tantamount to giving him the authority to appoint his own psychiatrist. Manipulation by self-centered defendants who rely on the constitutional safeguards of the criminal law is inherent in the system. Our state and federal Constitutions do not require truth or cooperation from a criminal defendant who seeks to take advantage of every consti-

---

We find no basis for the prosecution's assertion in its petition for rehearing that our opinion precludes it from presenting expert testimony to rebut the defendant's claim of incompetence. Here the fact of lack of cooperation is probative on the issue of whether Mayes is feigning incompetence. If Mayes produces his own expert in support of the claim of incompetence, the prosecution is left with Dr. Hansen's testimony regarding Mayes's conduct at the time he refused to cooperate in addition to any other evidence it may wish to present. We also point out that the burden of proving incompetence can shift in section 1368 proceedings, depending on whether incompetence is asserted by the defendant, as here, or by the prosecution or judge. Defense counsel concedes the court would be within its authority to order a psychological examination if the burden of establishing mental condition were on the prosecution. The critical element here is that Mayes had the burden of establishing incompetence.

tutional and procedural right to avoid conviction. The right of an accused to present witnesses in his own defense is an essential attribute of the adversary system itself. (*Taylor* v. *Illinois* (1988) 484 U.S. 400 [98 L.Ed.2d 798, 810, 108 S.Ct. 646].)

" 'We have elected to employ an adversary system of criminal justice in which the parties contest all issues before a court of law. The need to develop all relevant facts in the adversary system is both fundamental and comprehensive. The ends of criminal justice would be defeated if judgments were to be founded on a partial or speculative presentation of the facts. The very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts, within the frame work of the rules of evidence. To ensure that justice is done, it is imperative to the function of courts that compulsory process be available for the production of evidence needed either by the prosecution or by the defense.' " (*Ibid.,* quoting *United States* v. *Nixon* (1974) 418 U.S. 683, 709 [41 L.Ed.2d 1039, 1064, 94 S.Ct. 3090].) The courts must strike a rational balance between the defendant's right to present evidence and the public interest in complete and truthful disclosure of critical facts. With these principles in mind, we believe a court's authority to impose evidentiary sanctions in the context of a mental competency hearing is limited to the need to protect the ability of the party with the burden of proof to put on its case. (See *Pope* v. *United States* (8th Cir. 1967) 372 F.2d 710.) We distinguish *Taylor* v. *Illinois, supra,* 484 U.S. 400 [98 L.Ed.2d 798] and *United States* v. *Nobles* (1974) 422 U.S. 225 [45 L.Ed.2d 141, 95 S.Ct. 2160], two cases employing evidentiary sanctions for the accused's failure to comply with discovery rules, because both involve testimony of third party witnesses and neither concerns the question presented here of the defendant's right not to discuss certain matters with the state.

We must be governed by our constitutional system and not by our frustration with those self-centered defendants who are intent on using the system for their own purposes.[6] And even though there is a risk that the fact-finding process may occasionally be skewed when a manipulative defendant presents mental health experts as "hired guns," we nonetheless trust in the ethical commitment of mental health professionals and the ability of the factfinder, whether judge or jury, to properly assess the credi-

[6] We do not think this opinion provides a script for recalcitrant defendants seeking to frustrate the system. We believe the prosecution overstates the scope of our opinion (see fn. 7, *post,* p. 919) and takes an unrealistic view of a defendant's zeal to establish incompetency. The reason we make this latter statement is that there is questionable benefit, if any, to a defendant who proves his or her incompetency. The successful defendant can be confined in a mental health facility for a longer period than the maximum prison term which can be imposed for the charged offenses (§§ 1370, 1375.5) or, if competence is regained sooner, face the criminal charges which have merely been suspended.

bility of these witnesses in determining the defendant's competency to stand trial.

We have also considered and rejected a related concern that our conclusions "eradicate" the trial court's power to compel a defendant claiming mental incompetency to submit to a court-ordered psychiatric examination. We have outlined the two-step process which occurs in competency proceedings: initiation of section 1368 proceedings based on the court's doubt as to the defendant's mental competence and trial on the issue of competency. When a defendant's failure to complete a court-ordered psychological examination in the first stage of the process appears to be based on mere lack of cooperation or the pretense of incompetence, a trial court may simply conclude the defendant is competent. Here the court concluded in the first stage of the proceedings that there was substantial evidence of present mental incompetence based on Dr. Hansen's testimony regarding the psychological examination and Mayes's conduct—the only evidence before the court. It is both illogical and unfair to condition Mayes's presentation of expert testimony in the second stage, the competency trial, on his lack of cooperation with the court-appointed psychologist in the first stage where the court itself concluded there had been a prima facie showing of mental incompetence. Furthermore, the failure to cooperate with court-appointed psychiatrists or psychologists at any stage of the proceedings may be a symptom of the mental incompetence at issue rather than merely an artful stratagem by the competent defendant to establish incompetence.

We therefore conclude the court prejudicially erred in denying Mayes the opportunity to present evidence material to the question of his competency. Mayes's right to present testimony by a mental health expert other than the court-appointed expert may not be conditioned on his cooperation with the court-appointed expert or upon the source of payment for the second expert. ▮▮▮▮ Because we cannot say the court's error was harmless beyond a reasonable doubt, we reverse the judgment.[7]

---

[7] We are sensitive to the prosecution's concern with judicial economy and considered the question in depth in the course of drafting this opinion, even though the parties failed to brief the issue. Our review of cases challenging section 1368 proceedings revealed that they follow the general rule in criminal cases where appeal follows final judgment. While the rule of *People v. Pompa-Ortiz* (1980) 27 Cal.3d 519 [165 Cal.Rptr. 851, 612 P.2d 941], requiring that errors in a preliminary examination be reviewed by extraordinary writ, is appropriate in that context, competency proceedings are sufficiently different from preliminary examinations that the *Pompa-Ortiz* rationale is inapplicable. Preliminary hearings involve substantially the same issues as the subsequent criminal trial and evidentiary errors at the preliminary hearing are often cured at trial. By contrast, the issues of mental competency in a section 1368 proceeding are totally different from the issues presented in the criminal trial. The only similarity between the two proceedings is the requirement of a preliminary finding of competency or probable cause before the criminal proceedings may continue. As a practical matter, a pretrial challenge to judgments in competency proceedings may or may not result in a saving of ju-

DISPOSITION

Judgment reversed.

Kremer, P. J., and Work, J., concurred.

A petition for a rehearing was denied July 8, 1988, and respondent's petition for review by the Supreme Court was denied September 22, 1988.

---

dicial resources because of the range of procedural scenarios. In some cases mental competency trials can be drawn out over days or weeks to be followed by the defendant entering a guilty plea. (See e.g., *People v. Laudermilk, supra,* 67 Cal.2d 272.) Other times, competency is virtually uncontested, with judgment based solely on written psychiatric evaluations, followed by a lengthy trial. Even if we decided *Pompa-Ortiz* was applicable in the context of section 1368 proceedings, Mayes did in fact seek a pretrial writ challenging the trial court's decision regarding the expert testimony. The court simply did not follow its mandate. In any case, we do not believe it is the role of the intermediate appellate court to devise a new rule of criminal procedure requiring that the right to relief from irregularities in a competency proceeding be limited to pretrial challenge absent a showing of prejudice.

In all candor, if Mayes was in fact competent at the time of trial, reversal is indeed an unfortunate and wasteful use of resources. We would like to accommodate the prosecution and the system by ordering a limited rehearing, but we are unaware of any fair means of doing so. We cannot go back in time and reconstruct a competency hearing based on written reports and a trial transcript. More importantly, both the United States Supreme Court and the California Supreme Court have rejected the notion of retrospective determination of an accused's competence to stand trial. (See *Pate v. Robinson, supra,* 383 U.S. at p. 387 [15 L.Ed.2d at p. 823]; *People v. Pennington, supra,* 66 Cal.2d at p. 521.)