[No. B045046. Second Dist., Div. Six. May 21, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
ARTHUR GARY SILVER, Defendant and Appellant.

**COUNSEL**

Robert G. Foote for Defendant and Appellant.

John K. Van de Kamp and Daniel E. Lungren, Attorneys General, Richard B. Iglehart, Chief Assistant Attorney General, Edward T. Fogel, Jr., Assistant Attorney General, Donald de Nicola and Frederick Grab, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

GILBERT, J.—Health and Safety Code section 11401[1] defines a controlled substance analog as having a chemical structure "substantially similar" to a controlled substance, or having an effect on the central nervous system "substantially similar" to a controlled substance.

Here we hold that the statute is not unconstitutionally vague.

Arthur Gary Silver was convicted after a jury trial of possession for sale and sale of methylenedioxymethamphetamine (MDMA), an analog of methamphetamine, a controlled substance. (§§ 11378, 11379, 11401.) We affirm.

### The Experts

At trial, Margaret Barber, who supervised chemical analysis for the Ventura County Sheriff's Department Crime Laboratory, testified that in her opinion MDMA is substantially similar to methamphetamine, a controlled substance. When asked on cross-examination what "substantially similar" meant to her, she replied, "Chemically the structures are very similar." She also testified that "substantially similar" has no scientific meaning, but that "analog" had the scientifically accepted meaning of being "[s]imilar to another substance."

Jay Williams, a forensic toxicologist, testified for the defense. Williams stated that MDMA and methamphetamine were not similar; that only 50 percent of the molecules were the same or similar; that it was impossible to create a molecule of MDMA from a molecule of methamphetamine; and that they were "basically different chemical compounds." He also testified that methamphetamine is a stimulant, but MDMA is an hallucinogen.

Doctor Alexander Shulgin, a biochemist, also testified for the defense. Shulgin stated that the term "substantially similar" is meaningless and has no scientific acceptance. On cross-examination he stated that in ways methamphetamine and MDMA are similar in effect in that both cause intoxication, motor tremor and appetite loss, but in other ways they have different effects: methamphetamine is more of a stimulant and does not cause "the easy self-acceptance and self image that comes from M.D.M.A."

In rebuttal, the prosecution called a biochemist, Doctor Arne Bergh, who testified that MDMA was substantially similar to methamphetamine. He

---

[1] All further statutory references are to the Health and Safety Code unless otherwise specified.

explained that both compounds contain phenyl propylamines which act as a stimulant; that the addition of a methylene dioxy group would convert methamphetamine into MDMA; and that the addition would not create a substantial difference. Both compounds have the same general effect of stimulating the central nervous system, and although some people classify MDMA as an hallucinogen, he would classify it as a stimulant.

## DISCUSSION

### I

■ There is no merit to Silver's contention that section 11401 is unconstitutionally vague. Section 11401 provides in part that a controlled substance analog shall be treated the same as a controlled substance. It defines a controlled substance analog as a substance having a chemical structure "substantially similar" to a controlled substance, or having an effect on the central nervous system "substantially similar" to or greater than a controlled substance.[2]

It may be true that the term "substantially similar" has no scientific meaning, but the Constitution does not require scientific or mathematical precision. (See *Smith* v. *Peterson* (1955) 131 Cal.App.2d 241, 246 [280 P.2d 522, 49 A.L.R.2d 1194].) All that is required is that the statute be reasonably certain so that persons of common intelligence need not guess at

---

[2]Section 11401 provides:

"(a) A controlled substance analog shall, for the purposes of Chapter 6 (commencing with Section 11350), be treated the same as the controlled substance classified in Section 11054 or 11055 of which it is an analog.

"(b) Except as provided in subdivision (c), the term 'controlled substance analog' means either of the following:

"(1) A substance the chemical structure of which is substantially similar to the chemical structure of a controlled substance classified in Section 11054 or 11055.

"(2) A substance which has, is represented as having, or is intended to have a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to, or greater than, the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance classified in Section 11054 or 11055.

"(c) The term 'controlled substance analog' does not mean any of the following:

"(1) Any substance for which there is an approved new drug application as defined under Section 505 of the federal Food, Drug, and Cosmetic Act (21 U.S.C. Sec. 355) or which is generally recognized as safe and effective for use pursuant to Sections 501, 502, and 503 of the federal Food, Drug, and Cosmetic Act (21 U.S.C. Secs. 351, 352, and 353) and 21 C.F.R. Section 330 et seq.

"(2) With respect to a particular person, any substance for which an exemption is in effect for investigational use for that person under Section 505 of the federal Food, Drug, and Cosmetic Act (21 U.S.C. Sec. 355), to the extent that the conduct with respect to that substance is pursuant to the exemption.

"(3) Any substance, before an exemption as specified in paragraph (2) takes effect with respect to the substance, to the extent the substance is not intended for human consumption."

its meaning. (See *Connally* v. *General Construction Co.* (1926) 269 U.S. 385, 391 [70 L.Ed. 322, 46 S.Ct. 126].) "The requirement of reasonable certainty does not preclude the use of ordinary terms to express ideas which find adequate interpretation in common usage and understanding." (*Smith* v. *Peterson, supra*, at p. 246.)

Thus, statutes have been upheld requiring automobile mufflers to be "adequate" and effective "to prevent any 'excessive or unusual noise'" (*Smith* v. *Peterson, supra*, 131 Cal.App.2d 241, 244); prohibiting persons from being intoxicated "to the annoyance of another person" (*People* v. *Beifuss* (1937) 22 Cal.App.2d Supp. 755, 757 [67 P.2d 411]); prohibiting an employee from "mingling" with a patron (*People* v. *King* (1952) 115 Cal.App.2d Supp. 875 [252 P.2d 78]); and making it a crime to "annoy or molest" a child under age 18. (*People* v. *Pallares* (1952) 112 Cal.App.2d Supp. 895 [246 P.2d 173]; see generally 1 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) Introduction to Crimes, § 52, pp. 62-64.) As used in section 11401, the term "substantially similar" is no less certain, and persons involved in the unlawful manufacture, sale, possession or use of chemicals that resemble controlled substances in structure or effect need not guess at the statute's meaning.

Moreover, the federal controlled substance analog statute employs the same terms to define a controlled substance analog as section 11401 (21 U.S.C. §§ 802(32), 813),[3] and the federal statute has been found not to be

---

[3] 21 United States Code section 802(32) provides:

"(A) Except as provided in subparagraph (B), the term 'controlled substance analogue' means a substance—

"(i) the chemical structure of which is substantially similar to the chemical structure of a controlled substance in schedule I or II;

"(ii) which has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II; or

"(iii) with respect to a particular person, which such person represents or intends to have a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II.

"(B) Such term does not include—

"(i) a controlled substance;

"(ii) any substance for which there is an approved new drug application;

"(iii) with respect to a particular person any substance, if an exemption is in effect for investigational use, for that person, under section 505 of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 355) [21 U.S.C.A. § 355] to the extent conduct with respect to such substance is pursuant to such exemption; or

"(iv) any substance to the extent not intended for human consumption before such an exemption takes effect with respect to that substance."

21 United States Code section 813 provides:

"A controlled substance analogue shall, to the extent intended for human consumption, be treated, for the purposes of any Federal law as a controlled substance in schedule I."

vague. (*U.S.* v. *Desurra* (5th Cir. 1989) 865 F.2d 651, 653; *U.S.* v. *Granberry* (5th Cir. 1990) 916 F.2d 1008, 1010.)

In *Desurra* the defendants were convicted of possessing MDMA with the intent to distribute it. The court rejected their vagueness challenge to the statute holding that a vagueness challenge not involving First Amendment freedoms must be examined in light of the facts of the case at hand. (Citing *United States* v. *Mazurie* (1975) 419 U.S. 544 [42 L.Ed.2d 706, 95 S.Ct. 710].) The court stated that the legislative history of the analog act shows that MDMA was one of the drugs that prompted its enactment, and that the government's temporarily unsuccessful efforts to list MDMA as a controlled substance should have given the defendants further notice that MDMA was an illicit drug.

Section 11401 no doubt copied the language of the federal act which preceded it. If a defendant should have known that the federal act was aimed at MDMA, it should come as no surprise that a state statute employing the same language also covered the same drug.

*Granberry* involved an analog of MDMA. The court there did not analyze the statute in light of the facts of the case, but found the statute to be sufficiently certain on its face.

Silver's argument that section 11401 could be used to convict a person of possession of alcohol does not impress us. The answer is that the statute will be construed to avoid absurd consequences. (*In re Cregler* (1961) 56 Cal.2d 308, 312 [14 Cal.Rptr. 289, 363 P.2d 305]; *People* v. *Buese* (1963) 220 Cal.App.2d 802, 805 [34 Cal.Rptr. 102].)

Nor is there merit to Silver's argument that MDMA is not the sort of "designer drug" intended to be covered by section 11401. Although Silver's definition of the term "designer drug" is unclear, apparently he means a drug recently designed to circumvent the laws governing controlled substances. He points to the testimony of one of his experts that MDMA was discovered around 1914, and posits that if the Legislature had intended to control MDMA, it had ample opportunity to list it on the proper schedule as a controlled substance.

But section 11401 does not employ the term "designer drug," nor is the scope of the statute expressly limited to recently discovered analogs. Moreover, simply because MDMA has been known since 1914 does not mean that it has been perceived as a problem requiring legislative action for that long. There was no testimony that the drug had a long history of abuse or use

without medical supervision. There is no reason to conclude that MDMA is outside the purview of section 11401.

## II

 Silver next contends there was no rational basis for the jury to determine his guilt beyond a reasonable doubt. He argues that well-qualified experts testified on both sides of the question whether MDMA is substantially similar to methamphetamine, and the jury had no rational basis for disbelieving the testimony of some experts and believing the testimony of others. Thus, he concludes that reasonable doubt exists as a matter of law.

But jurors are called upon to judge the credibility of witnesses, including experts, based on such factors as the witness's demeanor. That the factors used by jurors are not easily articulated or do not appear on the record does not mean the determination is arbitrary or the result of personal biases. Our system of justice is based on trust in the ability of the finder of fact, whether judge or jury, to properly assess the credibility of experts. (See *People* v. *Mayes* (1988) 202 Cal.App.3d 908, 918-919 [248 Cal.Rptr. 899].) There is simply no reason to believe that the jurors were any less qualified to judge the credibility of expert witnesses in this case than in any other.

## III

 Silver contends he was denied the constitutional right to be adequately advised of the charges against him. We disagree.

The information charged Silver with sale and possession for sale of "a controlled substance, to wit, methylenedioxymethamphetamine (MDMA)." The information neither mentioned section 11401 nor alleged that MDMA is an analog of methamphetamine. Nevertheless, Silver's pretrial motions to set aside and amend the information show that he knew he was being prosecuted under the analog statute. He admits on appeal that he understood the charges, but argues the court and the jury appeared to be confused.

Even if the charging information was defective, because Silver admitted he understood the nature of the charges, it is difficult to see how his right to be advised of the charges against him was abridged.

Moreover, there is no evidence that the judge or jury was confused. As evidence of confusion, Silver points to jury instructions which he says seem to instruct the jury that MDMA is an analog of a controlled substance, an issue the jury must decide. The instructions state:

"In order to prove [sale of an analog of a controlled substance], each of the following elements must be proved: [¶] One, a person sold a substance shown to be an analog of a controlled substance and, two, such person had knowledge of its nature as M.D.M.A."

"In order to prove [possession of an analog of a controlled substance], each of the following elements must be proved: [¶] One, a person exercised control or had the right to exercise control over a substance shown to be an analog of a controlled substance; [¶] Two, such person had knowledge of its presence; [¶] Three, such person had knowledge of its nature as M.D.M.A; . . ."

Although when read in isolation these instructions might indicate the jury should consider MDMA to be an analog of a controlled substance, the court also instructed the jury:

"It will be your function to determine whether M.D.M.A. is an analog of methamphetamine because a controlled substance analog is regarded the same as the controlled substance of which it is an analog.

". . . . . . . . . . . . . . . . . . . . . . . .

"The burden is on the prosecution to prove beyond a reasonable doubt that M.D.M.A. is an analog of methamphetamine. If you have a reasonable doubt whether M.D.M.A. is an analog of methamphetamine, you must give the defendant the benefit of that doubt and find him not guilty."

When regarded as a whole (*People* v. *Crandell* (1988) 46 Cal.3d 833, 874 [251 Cal.Rptr. 227, 760 P.2d 423]), the instructions are not confusing. Nor does one juror's question about the reason for proving that one molecule is substantially similar to another indicate confusion. If anything, the question acknowledges an understanding of the necessity for making such a finding.

## IV

■ Finally, Silver contends that improper questioning on jury voir dire deprived him of a fair trial. Jurors were asked whether they had any quarrel or disagreements with our drug laws and whether they had any feelings about whether possessing, possessing for sale or selling MDMA should be a crime. Silver claims these questions led the jury to believe that MDMA was an illegal substance and that the only issue remaining was whether he possessed or sold the substance.

We are at a loss to see how those questions could lead the jury to conclude that MDMA is an illegal substance. In any event, the jury was properly

instructed that it was their function to determine that question, and that if there was a reasonable doubt that MDMA is an analog of methamphetamine, they must find the defendant not guilty. We presume the jury followed those instructions. (*People* v. *Bonin* (1988) 46 Cal.3d 659, 699 [250 Cal.Rptr. 687, 758 P.2d 1217].)

The judgment is affirmed.

Stone (S. J.), P. J., and Yegan, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 15, 1991.