[No. E015224. Fourth Dist., Div. Two. Dec. 14, 1995.]

In re TERRY H., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
TERRY H., Defendant and Appellant.

**COUNSEL**

Lee B. Madinger, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, William M. Wood, Janelle B. Davis and Gil P. Gonzalez, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**HOLLENHORST, J.**—Terry H., a minor,[1] appeals his conviction of violating Health and Safety Code section 11680[2] (possession of an imitation controlled substance), challenging the application and constitutionality of such section.

## FACTS

On December 18, 1993, Riverside County Deputy Sheriff John Powers went to defendant's home in response to a call regarding possible narcotics at that location. On the kitchen counter were 10 zip-lock baggies, each of which appeared to contain 2 "hits" (blotter paper size dosages) of what the deputy recognized to possibly be LSD[3] (lysergic acid diethylamide). He also saw $50 in cash and pay/owe sheets.[4]

Defendant was read his *Miranda*[5] rights and after waiving such rights, in the presence of his parents, told the deputy that the blotter papers were "fake" LSD he was selling in order to make money. He said that he had paid $5 for each sheet, which he represented as containing three hits. He intended to sell it as "fake LSD" at $2 per square, expecting to make a total profit of $585.

Pursuant to an amended petition filed under Welfare and Institutions Code section 602, the Riverside County District Attorney charged defendant with violating section 11680. It was alleged that on December 18, 1993, defendant manufactured, distributed, and possessed with intent to distribute an imitation controlled substance. Following a contested jurisdictional hearing, the trial court found that defendant came within the provisions of Welfare and Institutions Code section 602, in that he violated section 11680 by possessing an imitation controlled substance. Thus, defendant was committed to juvenile hall for 15 to 30 days and ordered to be housed in the Riverside County jail.

---

[1]Defendant was born on April 14, 1976.

[2]All further statutory references are to the Health and Safety Code unless otherwise indicated.

[3]LSD comes in liquid form and resembles weak tea in color and consistency. The substance can be placed on items, absorbed in the skin, placed on marijuana and smoked through a pipe. It is custom and practice to place LSD in liquid form on blotter paper. A person buying the paper would not be able to tell if it contained LSD or not.

[4]"Pay/owe sheets" are commonly kept by drug dealers to record money or drugs owed to them, and money or drugs owed by them to other people.

[5]*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

ISSUES ON APPEAL

Defendant raises three issues on appeal: (1) whether the trial court's findings should be reversed because defendant only possessed blotter paper, which by itself is not an "imitation controlled substance" and is not a violation of section 11680; (2) whether blotter paper is within the scope of the California Imitation Controlled Substances Act; and (3) whether section 11680 is unconstitutionally vague and its enforcement against defendant was a violation of his right to due process.

DID DEFENDANT POSSESS AN IMITATION CONTROLLED SUBSTANCE?

Section 11680 provides that "[a]ny person who knowingly manufactures, distributes, or possesses with intent to distribute, an imitation controlled substance is guilty of a misdemeanor . . . ." Pursuant to section 11675, an imitation controlled substance is defined as "(a) a product specifically designed or manufactured to resemble the physical appearance of a controlled substance, such that a reasonable person of ordinary knowledge would not be able to distinguish the imitation from the controlled substance by outward appearances, or (b) a product, not a controlled substance, which, by representations made and by dosage unit appearance, including color, shape, size, or markings, would lead a reasonable person to believe that, if ingested, the product would have a stimulant or depressant effect similar to or the same as that of one or more of the controlled substances included in Schedules I through V, inclusive, of the Uniform Controlled Substances Act, pursuant to Chapter 2 (commencing with Section 11053) of Division 10."

Defendant contends that the blotter papers within his possession did not meet the legal definition of an imitation controlled substance because the papers do "not appear to *be* the controlled substance LSD, and may only, on some occasions, *contain* LSD." Moreover, he claims that the papers are not "swallowed or taken into the body for digestion" as suggested by section 11675. Thus, defendant argues that it is not clear that section 11680 was violated. We disagree.

In response to defendant's first claim that the papers did not appear to be a controlled substance, we find that the record suggests otherwise. We know that LSD may be sold by staining blotter paper with the drug in its liquid form. The paper is then "placed on the tongue and the LSD is sucked out of the paper." As defendant admitted, he could not tell whether the papers were real or fake. Instead, he had to first test the papers to confirm that they were fake "hits" before carrying out his plan to sell them to friends to make money. Moreover, Deputy Powers, a drug recognition expert, testified that a

reasonable person would have believed that the papers contained LSD. Accordingly, we find that the papers did appear to be a controlled substance.

We also reject defendant's second claim that the papers are not "ingested" as contemplated by section 11675. Such interpretation of the use of the word "ingest" is far too strict. Instead, we accept respondent's argument that the "statute contemplates a possibility—'if ingested'—not an actuality." Section 11680 is violated by the act of "knowingly manufactur[ing], distribut[ing], or possess[ing] with intent to distribute," (§ 11680) a product which, "by representations made and by dosage unit appearance, including color, shape, size, or markings, would lead a reasonable person to believe that, if ingested, the product would have a stimulant or depressant effect similar to or the same as that of" (§ 11675) the actual substance. Because LSD may be sold by staining blotter paper with the drug in its liquid form, defendant's plan to represent that his blotter papers contained LSD and to sell them to his friends, amounts to "knowingly manufactur[ing], distribut[ing], or possess-[ing] with intent to distribute, an imitation controlled substance." (§ 11680; cf. *People* v. *Hill* (1992) 6 Cal.App.4th 33, 43-44 [8 Cal.Rptr.2d 123].)

For the above reasons, we find that defendant did possess an imitation controlled substance within the meaning of the statute.

### Is Blotter Paper Within the Scope of the California Imitation Controlled Substances Act?

Defendant argues that even if the blotter paper could be considered to be an imitation controlled substance, it is not prohibited by section 11680 because the legislative history of that statute shows that the law was enacted to prohibit only the distribution of counterfeit drugs which could be lawfully obtained by a prescription. We disagree.

The same argument was made in *People* v. *Hill, supra,* 6 Cal.App.4th 33, and it was rejected by our colleagues in the First District. As the court stated, "the codified language actually used covers a far broader spectrum" than the more limited focus set forth in the legislative history. (*Id.,* at p. 43.) Thus, the court interpreted section 11680 broad enough to include imitations of cocaine and cocaine base. Applying the same reasoning to the instant case, we conclude that section 11680 also includes imitations of LSD.

### Is Section 11680 Unconstitutionally Vague Such That Its Enforcement Against Defendant Constitutes a Violation of His Right to Due Process?

 In his final argument, defendant contends that section 11680 is unconstitutionally vague because it is unclear "what constitutes an imitation

controlled substance under the Imitation Controlled Substances Act." Thus, he argues that it is up to "the police and judges and juries to determine how and when the law should be enforced, without a clear standard for measuring such determinations." We disagree.

"Due process requires a ' "reasonable degree of certainty in legislation, especially in the criminal law . . . ." ' [Citations.] Thus, a statute must be definite enough to provide (1) a standard of conduct for those whose activities are proscribed and (2) a standard for police enforcement and for ascertainment of guilt. [Citation.] . . . [¶] . . . 'In order to succeed on a facial vagueness challenge to a legislative measure that does not threaten constitutionally protected conduct . . . a party must do more than identify some instances in which the application of the statute may be uncertain or ambiguous; he must demonstrate that "the law is impermissibly vague *in all of its applications.*" ' [Citations.] Defendant cannot pass this test." (*People* v. *Kelly* (1992) 1 Cal.4th 495, 533-534 [3 Cal.Rptr.2d 677, 822 P.2d 385].)[6]

Section 11680, in its present form, has been around since 1982. Defendant cites no case, and we have found none, which questions the constitutionality of this section on grounds of vagueness. Instead, he boldly suggests that "the reasonable person will have considerable difficulty in determining if the statute is intended to prohibit someone from possessing clean blotting paper and passing it off as containing LSD." We reject such suggestion.

In determining whether or not section 11680 is vague, we begin by looking to the language of the statute. (*Walker* v. *Superior Court* (1988) 47 Cal.3d 112, 143 [253 Cal.Rptr. 1, 763 P.2d 852].) The language of section 11680 is clear. It proscribes the knowing manufacturing, distribution, or possession with intent to distribute, of an imitation controlled substance. Simply stated, an imitation controlled substance includes a substance represented as, and made to look like, "the real thing," i.e., the physical appearance "would lead a reasonable person to believe that, if ingested, the product would have a stimulant or depressant effect similar to" the actual substance. (§ 11675.) There is nothing vague or ambiguous about this definition.

---

[6]As respondent points out, claims of vagueness generally fail. (*People* v. *Heilman* (1994) 25 Cal.App.4th 391 [30 Cal.Rptr.2d 422] [stalking statute is not vague because of its use of the word "repeatedly"]; *People* v. *Smith* (1993) 13 Cal.App.4th 1182 [16 Cal.Rptr.2d 820] [enhancement for injuring the elderly was not unconstitutionally vague]; *In re Alberto R.* (1991) 235 Cal.App.3d 1309 [1 Cal.Rptr.2d 348] [a gang enhancement statute not vague because it gives adequate notice of prohibited conduct]; *People* v. *Silver* (1991) 230 Cal.App.3d 389 [281 Cal.Rptr. 354] [a law outlawing substances "substantially similar" to listed controlled substances not vague]; and *People* v. *Green* (1991) 227 Cal.App.3d 692 [278 Cal.Rptr. 140] [participation in a criminal street gang not unconstitutionally vague or overbroad].)

Moreover, there is no confusion over defendant's violation of the statute. Defendant admitted that he possessed the blotter papers, which he described as "fake" LSD, for the purpose of selling them to his friends to turn a profit. Not only did Deputy Powers, a drug recognition expert, initially believe that the papers contained LSD, defendant himself acknowledged that he had to first test the papers to confirm that they were fake.

Nonetheless, defendant points to the legislative history of the statute, arguing that it offers "another and different definition of an 'imitation controlled substance': [¶] (a) Early in 1980 distributors began flooding the nation with *capsules and tablets* known as 'imitation controlled substances.' [¶] (b) Imitation controlled substances are carefully designed to resemble or duplicate the appearance of *brandname* amphetamines, barbiturates, tranquilizers, and narcotic pain killers." Thus, defendant would have us find that only imitations of *legal* drugs are covered by the statute. However, as the *Hill* court noted, the language in section 11680 "covers a far broader spectrum" than the limited focus set forth in the legislative history. (*People v. Hill, supra,* 6 Cal.App.4th 33, 43.)

For the above reasons, we conclude that the language in section 11680 is not unconstitutionally vague.

## DISPOSITION

The judgment is affirmed.

Ramirez, P. J., and McKinster, J., concurred.