[No. E047898. Fourth Dist., Div. Two. Apr. 13, 2010.]

THE PEOPLE, Plaintiff and Respondent, v.
WALTER BECKER, Defendant and Appellant.

**COUNSEL**

James R. Bostwick, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Gary W. Schons, Assistant Attorney General, Jeffrey J. Koch, Scott C. Taylor and Theodore Cropley, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**KING, J.—**

## I. INTRODUCTION

Defendant Walter Becker was convicted of numerous offenses stemming from an assault he perpetrated against Pauline and Rudy Neitz in the Neitzes' Rubidoux apartment on April 4, 2007. Following the incident, police apprehended defendant and found various drugs in his possession, including 10 tablets of the drug MDMA (methylenedioxymethamphetamine), commonly known as Ecstasy.

As pertinent to this appeal, defendant was charged in count 5 with possession of "Ecstasy" for sale (Health & Saf. Code, § 11378)[1] and was convicted of the lesser included offense of simple possession of Ecstasy (§ 11377). Defendant was sentenced to 12 years in prison, including eight months on count 5.

Defendant claims insufficient evidence supports his conviction for possession of Ecstasy because Ecstasy is neither a controlled substance nor an analog of any controlled substance for purposes of section 11377. He further argues he was deprived of his due process right to notice of the charge in count 5 because the information did not indicate he would be prosecuted

---

[1] All further statutory references are to the Health and Safety Code unless otherwise indicated.

based on the theory that Ecstasy is an analog of a controlled substance for purposes of section 11378 or 11377. We reject these claims.

## II. BACKGROUND

On April 3, 2007, Pauline and Rudy Neitz and several children were living in an apartment in Rubidoux. That day, defendant's digital camera was taken from a nearby apartment, and "some kids" told defendant that Pauline's four-year-old niece had taken it. Defendant went to the Neitzes' apartment and asked Pauline to ask her niece whether she had the camera. Pauline agreed to ask her niece about the camera.

Around 10:00 p.m. on April 4, defendant came back to the Neitzes' apartment and asked Pauline whether she had found his camera. Pauline told him they had not found his camera, though they had searched for it in their apartment. Defendant took a pistol from his sweat jacket, held it in the palm of his hand, and showed it to Pauline. Rudy then stepped in front of Pauline and began arguing with defendant. Pauline went into the kitchen and called 911.

While Pauline was on the phone with the 911 dispatcher, defendant pointed the gun at Rudy and the two men "started fighting." Defendant struck Rudy several times with the gun. Rudy heard Pauline yell, "watch out," and a shot rang out. At that point, defendant ran out the apartment door and down the stairs. Rudy was angry and chased defendant down the stairs. Near the bottom of the stairs, defendant turned, pointed the gun at Rudy again, and said, "You better watch your back." Rudy stopped chasing defendant and went back to his apartment to check on his family.

Later that evening, sheriff's deputies apprehended defendant a short distance from the Neitzes' apartment. In defendant's pants pocket, they found a plastic bag containing separate baggies of marijuana, rock cocaine, and 10 Ecstasy pills. Criminalist Kristen Rager testified that Ecstasy is the street name for "3, 4-methylenedioxymethamphetamine or MDMA." She tested two of the 10 pills found in defendant's possession and found they contained MDMA.

Investigator Marc Bender testified concerning the effects on an individual who would take an Ecstasy tablet. He said: "It's initially much like cocaine. It's methyldioxy methamphetamine, that is what MDMA is. So from the methamphetamine, logically it's a stimulant, so you would get a dramatically raised heart rate, your heartbeat would go to 120, 130 beats per minute. You would be infused with adrenaline, norepinephrine. . . . your pupils would dilate and become very large. You would be very excited . . . ." He added that MDMA

also has a "hallucinogenic effect where the person becomes fascinated with bright lights and loud noise."

## III. DISCUSSION

### A. *Substantial Evidence Supports Defendant's Conviction in Count 5*

Defendant challenges the sufficiency of the evidence to support his conviction in count 5 for simple possession of Ecstasy in violation of section 11377. He claims the evidence failed to show that Ecstasy is either a controlled substance or an analog of a controlled substance for purposes of section 11377. We disagree. Investigator Bender's testimony was sufficient to show that Ecstasy is either a controlled substance itself or a controlled substance analog of methamphetamine. In either case, substantial evidence supports defendant's conviction in count 5.

In considering a challenge to the sufficiency of the evidence to support a criminal conviction, our standard of review is well settled. We review the entire record in the light most favorable to the judgment and determine whether it contains substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could have found defendant guilty beyond a reasonable doubt. (*People v. Story* (2009) 45 Cal.4th 1282, 1296 [91 Cal.Rptr.3d 709, 204 P.3d 306].)

■ Section 11377 prohibits the possession of "any controlled substance" specified in several statutes, including, as pertinent, subdivision (d) of section 11055. (§ 11377, subd. (a).) Subdivision (d)(2) of section 11055 identifies "[m]ethamphetamine, its salts, isomers, and salts of its isomers" as a controlled substance. (See § 11055, subds. (a), (d).) Thus, methamphetamine is a controlled substance for purposes of section 11377.

More broadly, subdivision (d) of section 11055 lists "Stimulants" containing "any quantity" of several substances, including methamphetamine, as controlled substances. The statute reads: "(d) Stimulants. Unless specifically excepted or unless listed in another schedule, any material, compound, mixture, or preparation which contains any quantity of the following substances having a stimulant effect on the central nervous system: [¶] . . . [¶] (2) Methamphetamine . . . ."

■ Ecstasy or MDMA is not identified as a controlled substance in subdivision (d) of section 11055 or any of the other statutes listed in section 11377. However, section 11401, subdivision (a) states that, for purposes of several statutes, including section 11377, "[a] *controlled substance analog*

shall . . . be treated the same as the controlled substance classified in Section . . . 11055 of which it is an analog." (Italics added.)

A "controlled substance analog" is defined in section 11401, subdivision (b) as either: "(1) A substance the chemical structure of which is substantially similar to the chemical structure of a controlled substance classified in Section . . . 11055 . . . [or] [¶] (2) [a] substance which has, is represented as having, or is intended to have a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to, or greater than, the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance classified in Section . . . 11055." (§ 11401, subd. (b).)

Investigator Bender testified that Ecstasy or MDMA includes methamphetamine and, as such, has a stimulant effect substantially similar to the stimulant effect of methamphetamine. In relevant part, the investigator said: "It's methyldioxy methamphetamine, that is what MDMA is. So from the methamphetamine, logically it's a stimulant, so you would get a dramatically raised heart rate, your heartbeat would go to 120, 130 beats per minute. You would be infused with adrenaline, norepinephrine. . . . your pupils would dilate and become very large. You would be very excited . . . ."

 Based on the investigator's testimony, the jury could have reasonably concluded that Ecstasy or MDMA was (1) a controlled substance itself or (2) a controlled substance analog of methamphetamine. Thus, substantial evidence supports defendant's conviction in count 5 for simple possession of Ecstasy in violation of section 11377—whether Ecstasy is a controlled substance itself or a controlled substance analog of methamphetamine.

## B. *Defendant Was Adequately Notified of the Charge in Count 5*

For the first time in his reply brief, defendant claims his due process rights were violated because count 5 of the information alleged only that Ecstasy was a controlled substance, not a controlled substance analog, and did not mention section 11401. More specifically, he claims the information did not adequately advise him he would be prosecuted based on the theory that Ecstasy is a controlled substance analog of methamphetamine. Though defendant has improperly raised this claim for the first time in his reply brief (*Greenlining Institute v. Public Utilities Com.* (2002) 103 Cal.App.4th 1324, 1329, fn. 5 [127 Cal.Rptr.2d 736]), and though he has also forfeited this claim by failing to raise it in the trial court (*People v. Seaton* (2001) 26 Cal.4th 598, 641 [110 Cal.Rptr.2d 441, 28 P.3d 175]), we briefly address it here and find it without merit.

 "It is a fundamental principle of due process that 'one accused of a crime must be "informed of the nature and cause of the accusation." (U.S.

Const., Amend VI.)' " (*People v. Ramirez* (2003) 109 Cal.App.4th 992, 999 [135 Cal.Rptr.2d 542], quoting *People v. Thomas* (1987) 43 Cal.3d 818, 823 [239 Cal.Rptr. 307, 740 P.2d 419].) Due process requires that an accused be " 'advised of the charges against him so that he has a reasonable opportunity to prepare and present his defense and not be taken by surprise by evidence offered at his trial.' [Citation.]" (*People v. Seaton, supra,* 26 Cal.4th at pp. 640–641.)

In count 5, the information charged defendant with "a violation of Health and Safety Code section 11378," namely, possession for sale of "a controlled substance, to wit, ECSTASY." This adequately informed defendant he had to be prepared to defend against the charged crime of possession for sale of Ecstasy (Health & Saf. Code, § 11378), together with the necessarily included lesser offense of simple possession of Ecstasy, a violation of Health and Safety Code section 11377. (Pen. Code, § 1159; *People v. Reed* (2006) 38 Cal.4th 1224, 1227 [45 Cal.Rptr.3d 353, 137 P.3d 184]; *People v. Lohbauer* (1981) 29 Cal.3d 364, 368–369 [173 Cal.Rptr. 453, 627 P.2d 183].)

Moreover, for due process purposes there was no need to allege that Ecstasy was an *analog* of a controlled substance as opposed to a controlled substance, for purposes of section 11378 or 11377. The references in count 5 of the information to "Ecstasy," "controlled substance" and section 11378 fully apprised defendant that the prosecution was alleging and would seek to prove that Ecstasy was a controlled substance for purposes of section 11378 and 11377.[2] Defendant had every opportunity to research the law and determine whether Ecstasy or MDMA was a controlled substance for purposes of section 11378 or 11377, or whether it was an analog of another controlled substance, such as methamphetamine. He also had every opportunity to obtain discovery from the prosecution regarding its theory of the case in count 5. He was not inadequately informed of the nature and cause of the charge in count 5.[3]

---

[2] At defendant's preliminary hearing, the prosecution proceeded on count 5 based on the theory that Ecstasy was a controlled substance. No mention was made in any of the preliminary hearing testimony that Ecstasy was an analog of methamphetamine or any other controlled substance. Nor did defendant argue at the preliminary hearing that Ecstasy was neither a controlled substance nor an analog of a controlled substance.

[3] We observe that the same due process notice issue that defendant raises here was raised nearly 20 years ago in *People v. Silver* (1991) 230 Cal.App.3d 389 [281 Cal.Rptr. 354]. There the defendant was charged with the sale and possession for sale of " 'a controlled substance, to wit, methylenedioxymethamphetamine (MDMA).' " (*Id.* at p. 396.) The court first rejected the defendant's claim that section 11401 was unconstitutionally vague, reasoning that the statute's use of the phrase "substantially similar" in defining a controlled substance analog was "reasonably certain." (*People v. Silver, supra,* at pp. 393–396.) The court then considered the defendant's claim that he had been denied his due process right to notice of the charges because the information neither mentioned section 11401 nor alleged that MDMA was an

## IV. DISPOSITION

The judgment is affirmed.

Hollenhorst, Acting P. J., and Miller, J., concurred.

A petition for a rehearing was denied April 27, 2010, and appellant's petition for review by the Supreme Court was denied July 21, 2010, S182721.

---

analog of methamphetamine. The court found it unnecessary to decide the issue; instead, it concluded that "[e]ven if the charging information was defective," the defendant's pretrial motions to set aside and amend the information showed he knew he was being prosecuted pursuant to the analog statute, section 11401, and on appeal he even admitted he understood the charges. (*People v. Silver, supra*, at p. 396.)