Filed 6/14/21  P. v. Pesina CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

<table>
<tr><td>

THE PEOPLE,

    Plaintiff and Respondent,

v.

MATTHEW ALEXANDER PESINA,

    Defendant and Appellant.

</td><td>

F080499, F080500

(Super. Ct. Nos. BF174532A, BF175010A)

**OPINION**

</td></tr>
</table>

<u>**THE COURT**</u>*

APPEAL from a judgment of the Superior Court of Kern County.  Judith K. Dulcich, Judge.

Michael C. Sampson, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Darren K. Indermill and Nikta (Nikki) Allami, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

*      Before Hill, P.J., Levy, J. and DeSantos, J.

Defendant Matthew Alexander Pesina was convicted in Kern County Superior Court case No. BF174532A of possession of methamphetamine for sale and misdemeanor possession of methamphetamine.[1] He contends on appeal that the search that led to the discovery of the drugs was unlawful because it was preceded by a detention without reasonable suspicion of wrongdoing. The People disagree, arguing that defendant consensually interacted with the officer and the officer searched defendant only after learning he was on parole. Alternatively, defendant contends that the conviction for misdemeanor possession of methamphetamine should be reversed because it is a lesser included offense of possession of methamphetamine for sale. The People agree. We reverse the conviction for misdemeanor possession of methamphetamine, but we affirm in all other respects.

### PROCEDURAL SUMMARY

On December 7, 2018,[2] the Kern County District Attorney filed an information in Kern County Superior Court case No. BF174532A, charging defendant with possession of methamphetamine for sale (Health & Saf. Code, § 11378; count 1), transport of methamphetamine (Health & Saf. Code, § 11379, subd. (a); count 2), and misdemeanor possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a); count 3). As to counts 1 and 2, the information further alleged defendant had suffered a prior serious felony "strike" conviction within the meaning of the "Three Strikes" law (Pen. Code, [3] §§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)) and served seven prior prison terms (§ 667.5, subd. (b)).

---

[1] Defendant was also convicted of assault with a deadly weapon in Kern County Superior Court case No. BF175010A. Defendant's sentence in BF174532A was recalled and he was resentenced on both matters in one proceeding. However, defendant's arguments on appeal do not involve case No. BF175010A so we only briefly discuss that matter in this opinion.

[2] All further dates refer to the year 2018 unless otherwise stated.

[3] All further statutory references are to the Penal Code unless otherwise stated.

On April 3, 2019, the trial court dismissed count 2, pursuant to section 995. On the same date, the court denied defendant's motion to suppress evidence pursuant to section 1538.5.

On May 9, 2019, the jury found defendant guilty of counts 1 and 3. In a bifurcated hearing on the same date, the trial court found all special allegations true.

On August 20, 2019, the trial court struck three prior prison term enhancements and sentenced defendant to eight years in prison as follows: on count 1, four years (the middle term of two years doubled due to the prior strike conviction) plus four one-year prior prison term enhancements (§ 667.5, subd. (b)); on count 3, one year, stayed pursuant to section 654.

On November 13, 2019, in case No. BF175010A, defendant pled no contest to assault with a deadly weapon (§ 245, subd. (a)(1)) and admitted having suffered a prior strike conviction (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)). On the same date, the trial court recalled defendant's sentence in case No. BF174532A.

On December 17, 2019, the trial court sentenced defendant on both cases as follows: on case No. BF175010A, six years (the middle term of three years doubled due to the prior strike conviction); on count 1 of case No. BF174532A, 16 months (one-third of the middle term).[4]

On December 19, 2019, defendant filed a notice of appeal.

## FACTUAL SUMMARY

### The Suppression Hearing

On April 3, 2019, the trial court held a hearing on defendant's motion to suppress evidence pursuant to section 1538.5.

---

[4] The trial court did not impose a sentence on count 3 of case No. BF174532A and the abstract of judgment does not reflect a sentence on that count.

On March 29, at approximately 1:19 a.m., Bakersfield Police Officer Renee Garcia was on patrol in his vehicle near a motel in central Bakersfield. Garcia described the area as a "high-crime area primarily known for narcotics usage, narcotics sales, thefts, and assaults." As Garcia pulled into the motel parking lot, defendant and another man caught his attention. Both men turned their bodies and heads away from Garcia and began walking quickly away from him. Defendant "reach[ed] into his right pants pocket and appeared to be manipulating an object in his pocket." "As he had his hand in his pocket, he nervously looked from side to side …." Because defendant was in a high-crime area, at night, manipulating something in his pocket as he attempted to walk away from Garcia, Garcia believed that defendant may have been concealing a weapon or narcotics.

Garcia parked his vehicle about 15 feet away from defendant, exited the vehicle, and asked him, in a "conversational volume," what he was doing in the area. Garcia did not command defendant or the other man to stop or come to him. Defendant and the other man walked toward Garcia and defendant told him they were " 'waiting … for a ride.' " Garcia asked defendant what he had in his pocket. Defendant responded that he had nothing in his pocket. Garcia described that defendant "appeared to be extremely nervous"—he "stuttered" and "avoided eye contact …." Garcia then asked defendant and the other man if either was on probation or parole. Both responded that they were on parole.

Garcia then performed a patdown search of defendant and felt a "round cylindrical object in his right shorts pocket" and asked defendant what the object was. Defendant replied that it was " '[s]ome meth.' " Garcia then placed defendant under arrest.

On that record, the trial court denied defendant's motion to suppress evidence.

**The Trial Evidence**

Garcia's testimony at trial largely mirrored his testimony at the suppression hearing. He testified that he saw defendant and another man near a motel in a high-crime

area.  Defendant and the other man looked away from Garcia and appeared to be trying to hide their faces from him.  As defendant walked away, he appeared to be manipulating something in his pocket.

Garcia parked his car near defendant and asked the men what they were doing. Defendant responded that they were waiting for a ride.  Garcia asked defendant what he had in his pocket.  Defendant said it was nothing.  Garcia then conducted a patdown search of both men.  He felt a round, cylindrical object in defendant's front pocket and asked defendant what it was.  Defendant replied that it was " 'Meth.' "  Garcia removed the item from defendant's pocket.  It appeared to contain methamphetamine.  It was later determined be 14.5327 grams of a substance containing methamphetamine.  Defendant did not possess any drug-use paraphernalia.  Garcia placed defendant under arrest.

After defendant was arrested, Garcia asked him if he had a job.  Defendant responded he did not.  Garcia asked defendant how he got the methamphetamine. Defendant responded that he got it for free.  Garcia also testified that 0.05 grams to 0.1 grams is one dose of methamphetamine.  Defendant possessed over 100 doses, valued between $100 and $150.

## DISCUSSION

### Motion to Suppress Evidence

Defendant argues that the contact between he and Garcia was at no point a consensual encounter.  Instead, from the outset, it was a detention without reasonable suspicion of wrongdoing.  The People disagree. They argue that the interaction was a consent encounter until Garcia conducted the patdown search, permissible for officer safety and as a parole search.  We agree with the People that the encounter began as a consensual encounter and the search was a permissible parole search.

The federal and California constitutions prohibit unreasonable searches and seizures.  (U.S. Const., 4th & 14th Amends.; Cal. Const., art. I, § 13.)  California law applies federal constitutional standards to the review of search and seizure rulings.

5.

(*People v. Rogers* (2009) 46 Cal.4th 1136, 1156, fn. 8.)  A consensual encounter between a law enforcement officer and a citizen does not constitute a seizure under the Fourth Amendment.  (*Florida v. Bostick* (1991) 501 U.S. 429, 434; *People v. Kidd* (2019) 36 Cal.App.5th 12, 20 [" ' "It is well established that law enforcement officers may approach someone on the street or in another public place and converse if the person is willing to do so" without having any "articulable suspicion of criminal activity." ' "].)  An encounter is consensual if a reasonable person would feel free to leave or to refuse to cooperate with the officer.  (*Bostick*, at pp. 431, 434.)  A seizure, or detention, occurs when an officer restrains a person's liberty by means of either physical force or a show of authority.  (*Brendlin v. California* (2007) 551 U.S. 249, 254.)

The California Supreme Court has explained the test to distinguish between a consensual encounter and a detention:  "The United States Supreme Court has made it clear that a detention does not occur when a police officer merely approaches an individual on the street and asks a few questions.  [Citation.]  As long as a reasonable person would feel free to disregard the police and go about his or her business, the encounter is consensual and no reasonable suspicion is required on the part of the officer.  Only when the officer, by means of physical force or show of authority, in some manner restrains the individual's liberty, does a seizure occur.  [Citations.]  '[I]n order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter.'  [Citation.]  This test assesses the coercive effect of police conduct as a whole, rather than emphasizing particular details of that conduct in isolation.  [Citation.]  Circumstances establishing a seizure might include any of the following:  the presence of several officers, an officer's display of a weapon, some physical touching of the person, or the use of language or of a tone of voice indicating that compliance with the officer's request might be compelled."  (*In re*

6.

*Manuel G.* (1997) 16 Cal.4th 805, 821.) Other relevant factors can include "the time and place of the encounter, whether the police indicated the defendant was suspected of a crime, whether the police retained the defendant's documents, and whether the police exhibited other threatening behavior. [Citations.] [¶] Questions by an officer of a sufficiently accusatory nature may 'be cause to view an encounter as a nonconsensual detention.' [Citation.] The same is true for commands or directions issued in the course of an encounter." (*People v. Linn* (2015) 241 Cal.App.4th 46, 58.)

In reviewing a trial court's ruling on a motion to suppress, we review factual findings for substantial evidence and make all reasonable factual inferences in favor of the ruling. (*People v. Zamudio* (2008) 43 Cal.4th 327, 342.) We exercise our independent judgment to determine whether a seizure occurred and whether any seizure was reasonable under the Fourth Amendment. (*Ibid.*; *People v. Glaser* (1995) 11 Cal.4th 354, 362; *People v. Gutierrez* (2018) 21 Cal.App.5th 1146, 1152.)

If a detention itself is unlawful, its fruits—that is, evidence subsequently obtained from searches, as well as any statements made by the defendant in connection with those searches—must be suppressed. (*United States v. Crews* (1980) 445 U.S. 463, 470.)

Our first focus is on the events between the time Garcia first saw defendant and when defendant disclosed he was on parole. Using the principles espoused above, we find that defendant was not detained at that point in the initial encounter.

Here, Garcia was the only officer at the scene. He exited his car about 15 feet from defendant. There is no evidence in the record that suggests Garcia focused a vehicle light or flashlight on defendant or moved toward defendant in a confrontational or aggressive manner. (See *People v. Garry* (2007) 156 Cal.App.4th 1100, 1107, 1111 [an officer illuminating a defendant with a spotlight, walking " 'briskly' " toward him, and immediately asking questions about his legal status constituted a detention].) He asked defendant, in a "conversational volume," what he was doing at the motel. Although defendant and the other man were walking away from Garcia, he did not give defendant

7.

any command. (See *People v. Jones* (1991) 228 Cal.App.3d 519, 523 [a police officer directing a defendant to stop is sufficiently coercive to constitute a detention].) Defendant and the other man walked toward Garcia. Garcia asked defendant what he had in his pocket. Defendant said he had nothing in his pocket. To that point, there is no indicia that Garcia had detained defendant. While Garcia asked defendant what he was doing in the area and what he had in his pocket, "a detention does not occur when a police officer merely approaches an individual on the street and asks a few questions." (*In re Manuel G.*, *supra*, 16 Cal.4th at p. 821.) The questions were not of a sufficiently accusatory nature that a reasonable person in defendant's position would not have felt free to leave. (*People v. Franklin* (1987) 192 Cal.App.3d 935, 941 [during a consensual encounter, a police officer "may inquire into the contents of pockets," "ask for identification," or "request the citizen to submit to a search"]); see *People v. Lopez* (1989) 212 Cal.App.3d 289, 291, 293 [the defendant was not detained when an officer asked the defendant if a vehicle was his, what he was doing in the area, and if the officer could see his identification card]; cf. *Wilson v. Superior Court* (1983) 34 Cal.3d 777, 790 [the defendant was detained when, after asking for a moment of the defendant's time, the officer informed the defendant that he had information that he may be transporting narcotics then asked to search the defendant's luggage].)

In sum, Garcia did not detain defendant before learning that he was on parole.

After defendant admitted his parole status, Garcia was entitled to search him without a particularized suspicion of wrongdoing.[5] (*People v. Delrio* (2020) 45

---

[5] Defendant contends that the entire encounter was an impermissible detention therefore all evidence obtained as a result should have been suppressed. To that end, defendant argues that we should not consider whether his parole status justified the search because that was not the basis of the trial court's determination that the initial encounter was a valid consensual encounter. While he is correct that Garcia's knowledge that defendant was on parole cannot serve as the basis for any detention preceding his knowledge of defendant's parole status, defendant's parole status is a permissible ground

8.

Cal.App.5th 965, 970–971; *People v. Smith* (2009) 172 Cal.App.4th 1354, 1361.)

Defendant contends that the search could not have been a parole search because Garcia did not verify defendant was on parole. He erroneously relies on *People v. Sanders* (2003) 31 Cal.4th 318, 333, for that proposition. *Sanders* merely explains that a search cannot be a valid parole search "if the officer is unaware that the suspect is on parole and subject to a search condition." (*Sanders*, at p. 333.) No authority supports defendant's novel position that an officer must verify a defendant's admission that he is on parole before conducting a parole search. Because defendant admitted he was on parole, Garcia was not required to independently verify that defendant was on parole prior to performing a parole search. Thus, Garcia's search of defendant after he learned of defendant's parole status was proper.

The trial court did not err in denying defendant's motion to suppress.

_____

for the later search and detention (and is relevant in light of his argument that the detention was conducted without reasonable suspicion of wrongdoing).

Defendant relies on *Robey v. Superior Court* (2013) 56 Cal.4th 1218, 1242, for the position that we should not consider Fourth Amendment exception theories that were not the basis of the trial court's determination. However, *Robey* does not support his position. The *Robey* court explained: "Although it is not improper for a reviewing court to decide the merits of an alternate ground for affirming the judgment of a trial court even if that ground was not argued by the parties below [citations], we have cautioned that appellate courts should not consider a Fourth Amendment theory for the first time on appeal when 'the People's new theory was not supported by the record made at the first hearing and would have necessitated the taking of considerably more evidence …' or when 'the defendant had no notice of the new theory and thus no opportunity to present evidence in opposition.' " (*Robey*, at p. 1242.) Neither of the *Robey* court's concerns were at play here—Garcia testified that defendant told him that he was on parole and the prosecutor argued that defendant's parole status justified the search and any detention that took place after Garcia learned of defendant's parole status.

9.

## Conviction for Lesser Included Offense

The parties agree, as do we, that misdemeanor possession of methamphetamine (count 3) is a lesser included offense of possession of methamphetamine for sale (count 1), and therefore defendant should not have been convicted of both offenses.

Generally, "a person may be *convicted* of, although not *punished* for, more than one crime arising out of the same act or course of conduct."  (*People v. Reed* (2006) 38 Cal.4th 1224, 1226 (*Reed*); *People v. Gonzalez* (2014) 60 Cal.4th 533, 537 ["We have repeatedly held that the same act can support multiple charges and multiple convictions."].)  There is, however, an exception to this general rule:  a defendant cannot be convicted of two offenses when one is necessarily included in the other.  (*Reed*, at p. 1227 ["A judicially created exception to the general rule permitting multiple conviction 'prohibits multiple convictions based on necessarily included offenses.' "]; *People v. Ortega* (1998) 19 Cal.4th 686, 693 ["a defendant properly may be convicted of two offenses if neither offense is necessarily included in the other"], overruled on other grounds by *Reed*, at p. 1228.)  This exception ensures that a defendant is not twice convicted of the necessarily included, lesser offense.  (*People v. Medina* (2007) 41 Cal.4th 685, 702.)

When two offenses are charged, and the defendant is convicted of both, we apply the "elements" test to assess whether one is a necessarily included offense of the other and, in turn, whether multiple conviction is proper.  (*Reed*, *supra*, 38 Cal.4th at p. 1229; *People v. Scheidt* (1991) 231 Cal.App.3d 162, 165–171 ["only a statutorily lesser included offense is subject to the bar against multiple convictions in the same proceeding"].)  "Under the elements test, if the statutory elements of the greater offense include all of the statutory elements of the lesser offense, the latter is necessarily included in the former."  (*Reed*, *supra*, 38 Cal.4th at p. 1227.)  In other words, "if the crimes are defined in such a way as to make it impossible to commit the greater offense without also committing the lesser," then the lesser is necessarily included in the greater and a

defendant's conviction of the lesser must be vacated.  (*People v. Miranda* (1994) 21 Cal.App.4th 1464, 1467; accord, *Reed*, at p. 1227.)

Conviction for simple possession of methamphetamine requires proof that the defendant possessed methamphetamine, knew of the presence of the methamphetamine, knew of the methamphetamine's nature or character as a controlled substance, and possessed the methamphetamine in a usable amount.  (See Health & Saf. Code, § 11377, subd. (a); CALCRIM No. 2304.)  Conviction for possession of methamphetamine for sale includes the elements of simple possession of methamphetamine, plus the requirement that when the defendant possessed the methamphetamine, he intended to sell it. (See Health & Saf. Code, § 11378; CALCRIM No. 2302.)  Therefore, simple possession of methamphetamine is a lesser included offense of possession of methamphetamine for sale.  (See *People v. Becker* (2010) 183 Cal.App.4th 1151, 1157; *People v. Oldham* (2000) 81 Cal.App.4th 1, 16; *People v. Magana* (1990) 218 Cal.App.3d 951, 954.)

The conviction for simple possession of methamphetamine must be reversed.

## DISPOSITION

The conviction for simple possession of methamphetamine on count 3 is reversed. In all other respects, the judgment is affirmed.

11.