**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff - Appellee,* v. ANTHONY VALENTINO SOTO, *Defendant - Appellant.* | No. 23-4072 <br><br> D.C. No. 5:22-cr-00021-RGK-1 <br><br> ORDER CERTIFYING QUESTION TO THE SUPREME COURT OF CALIFORNIA |
| UNITED STATES OF AMERICA, *Plaintiff - Appellee,* v. STEPHEN REID, *Defendant - Appellant.* | No. 24-3903 <br><br> D.C. No. 2:23-cr-00391-JAK-1 |

Filed January 8, 2026

Before: Marsha S. Berzon, Mark J. Bennett, and Jennifer Sung, Circuit Judges.

# SUMMARY[*]

## Criminal Law

In two cases involving whether a defendant is subject to the career-offender sentencing enhancement under U.S.S.G. § 4B1.1 because of a prior conviction under California Health & Safety Code § 11378, the panel certified to the Supreme Court of California the following question:

> When a defendant is charged with possession of a listed controlled substance under California Health & Safety Code § 11378, must the state prove, and must the jury unanimously agree, that the defendant possessed the actual listed controlled substance, and not an analog of that substance as defined under California Health & Safety Code § 11401? Or may the jury convict if it finds the state has proven the defendant possessed *either* the actual controlled substance *or* an analog of that substance, without unanimous agreement as to which?

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

# ORDER

The issue in this case is whether defendants Anthony Soto ("Soto") and Stephen Reid ("Reid"; collectively, "Defendants") are subject to the career-offender sentencing enhancement, U.S.S.G. § 4B1.1, because of their prior convictions under California Health & Safety Code § 11378. That issue turns on a question of California law. Accordingly, we respectfully ask the California Supreme Court to answer the certified question of California law presented below:

> When a defendant is charged with possession of a listed controlled substance under California Health & Safety Code § 11378, must the state prove, and must the jury unanimously agree, that the defendant possessed the actual listed controlled substance, and not an analog of that substance as defined under California Health & Safety Code § 11401? Or may the jury convict if it finds the state has proven the defendant possessed *either* the actual controlled substance *or* an analog of that substance, without unanimous agreement as to which?

If the state must prove that a defendant possessed the actual listed controlled substance charged, and not an analog of that substance, then Defendants would be subject to the career-offender enhancement due to their prior § 11378 convictions. But if a controlled substance analog is an alternative means of proving that a defendant possessed the

listed controlled substance charged, then Defendants would not be subject to the career-offender enhancement.

We have concluded that resolution of this question will "determine the outcome of a matter pending in [this] court" and that "[t]here is no controlling precedent." Cal. R. Ct. 8.548.

## I.  FACTUAL             AND          PROCEDURAL BACKGROUND[1]

### A.  The Career-Offender Enhancement

Defendants Soto and Reid both pled guilty to federal drug trafficking charges.  At sentencing, they were each subjected to the career-offender enhancement, U.S.S.G. § 4B1.1, based on their past convictions under California Health & Safety Code § 11378 for distribution of amphetamine or methamphetamine.

The federal career-offender enhancement substantially increases a defendant's Sentencing Guidelines range.  *See* U.S.S.G. § 4B1.1(b).  A defendant qualifies for the career offender sentencing enhancement if:

> (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction;
>
> (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and

---

[1] To the extent that this Certification Order reveals information under seal, we unseal such information for purposes of this Order only.

> (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a). U.S.S.G. § 4B1.2 defines "controlled substance offense" as:

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
>
> (1) prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense; or
>
> (2) is an offense described in 46 U.S.C. § 70503(a) or § 70506(b).

U.S.S.G. § 4B1.2. We have held that the term "'controlled substance' in § 4B1.2(b) refers to a 'controlled substance' as defined in the [federal Controlled Substances Act]." *United States v. Bautista*, 989 F.3d 698, 702 (9th Cir. 2021).

### B. Anthony Soto

Defendant Anthony Valentino Soto was charged in an indictment filed in January 2022 with a single count of possessing more than 50 grams of methamphetamine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii), which carries a 10-year mandatory minimum sentence. 21 U.S.C. § 841(b)(1)(A)(viii). In August 2023, he pled guilty without a plea agreement.

Soto had previously been convicted of three controlled substance felonies in 2017: (1) possession for sale of methamphetamine, in violation of California Health & Safety Code § 11378 ("Section 11378" or "§ 11378"); (2) transportation for sale of methamphetamine, in violation of California Health & Safety Code § 11379(a); and (3) possession for sale of amphetamine, in violation of § 11378. The two methamphetamine-related convictions stem from the same conduct and were both charged in the same charging instrument.

In the Pre-Sentence Report ("PSR"), the United States Probation Office ("Probation") determined Soto's base offense level to be 32 based on drug weight, consistent with U.S.S.G. § 2D1.1(c) (150–500 grams of actual methamphetamine). The PSR applied a 2-point reduction for safety-valve eligibility under U.S.S.G. § 2D1.1(b)(18), for an adjusted offense level of 30. Importantly, it then applied the career-offender enhancement under U.S.S.G. § 4B1.1. Probation cited Soto's two § 11378 convictions from 2017, one for possession of methamphetamine and the other for possession of amphetamine, as the two qualifying predicate offenses for the enhancement. The career-offender enhancement raised Soto's offense level to 37, from which Probation subtracted 3 points for acceptance of responsibility, resulting in a total offense level of 34. At offense level 34 and criminal history category VI, Soto's Guidelines range was 262–327 months.

Soto objected to the career-offender designation and argued that his two § 11378 convictions were not qualifying controlled substances offenses under U.S.S.G. § 4B1.1–2. But the district court adopted the PSR's calculations and applied the career-offender enhancement. The district court

varied downward and sentenced Soto to 180 months in prison followed by 5 years of supervised release.

## C. Stephen Reid

Defendant Stephen Reid was indicted in August 2023 on six charges: one count of conspiracy to distribute fentanyl in violation of 21 U.S.C. § 846; two counts of distribution of fentanyl in violation of §§ 841(a)(1), (b)(1)(C); one count of distribution of fentanyl in violation of §§ 841(a)(1), (b)(1)(B); one count of possession of fentanyl with intent to distribute in violation of §§ 841(a)(1), (b)(1)(A) (which carries a 10-year mandatory minimum sentence); and one count of possession of methamphetamine with intent to distribute in violation of §§ 841(a)(1), (b)(1)(A) (which also carries a 10-year mandatory minimum sentence). In January 2024, Reid pled guilty to all six charges in the indictment pursuant to a conditional plea agreement which provided that he would be sentenced only on counts one (conspiracy to distribute fentanyl) and six (possession of methamphetamine), and under which he reserved his right to appeal application of the career offender and obstruction of justice enhancements to his sentence.

Relevant here, Reid had twice been convicted of possession for sale of methamphetamine in violation of California Health & Safety Code § 11378—once in 2009, and once in 2014. In his PSR, Probation calculated Reid's Guidelines range as follows. Pursuant to U.S.S.G. § 2D1.1, it determined his base offense level to be 32 based on the "converted drug weight" of the fentanyl and methamphetamine together. Probation then applied the career offender enhancement, § 4B1.1, which recast his offense level to 37. Probation cited Reid's two prior § 11378 convictions as the two qualifying predicate offenses for the

enhancement. Probation then subtracted 3 points for acceptance of responsibility, *see* U.S.S.G. § 3E1.1, resulting in a total offense level of 34. His resulting Guidelines range was 262–327 months.

The sentencing hearing took place in June 2024. Counsel for Reid objected to the career-offender enhancement and argued that the two § 11378 convictions are not "controlled substance offenses" that qualify him for the enhancement. The district court adopted the PSR's calculations and applied the career-offender enhancement. The district court varied downward from the 262–327 months guideline range and sentenced at 188 months in prison followed by five years of supervised release.

## II. GOVERNING FEDERAL LAW

Soto and Reid appeal the district courts' application of the career-offender enhancement based on their § 11378 convictions for possession of methamphetamine or amphetamine. The parties dispute whether a conviction under § 11378 for a specified listed controlled substance (e.g., methamphetamine) qualifies as a "controlled substance offense" under U.S.S.G. § 4B1.2. That issue turns on a question of California state law: when a defendant is charged with possession of a specified substance under § 11378, whether the state must prove, and a jury must unanimously agree, that the defendant possessed the actual substance charged rather than an analog of that substance. For example, if a defendant is charged with possession of methamphetamine under § 11378, must the state prove, and the jury unanimously agree, that the substance the defendant possessed was actual methamphetamine and not an analog of methamphetamine? Or may the state alternatively prove the charge by showing that the defendant possessed an

analog of methamphetamine consistent with California's definition of controlled substance analogs, California Health & Safety Code § 11401?

To illustrate why application of a federal sentencing guideline turns on a question of California law, we briefly explain the relevant inquiry under federal law. To determine whether a prior conviction under state law meets the definition of "controlled substance offense" under federal law, we follow the "categorical approach" set forth in *Taylor v. United States*, 495 U.S. 575 (1990). There are three possible steps. First, we "compare the elements of the statutory definition of the crime of conviction with a federal definition of the crime to determine whether conduct proscribed by the statute is broader than the generic federal definition." *United States v. Lee*, 704 F.3d 785, 788 (9th Cir. 2012). "If a state law 'proscribes the same amount of or less conduct than' that qualifying as a federal drug trafficking offense, then the two offenses are a categorical match," and that "end[s] our analysis." *United States v. Martinez-Lopez*, 864 F.3d 1034, 1038 (9th Cir. 2017) (en banc) (quoting *United States v. Hernandez*, 769 F.3d 1059, 1062 (9th Cir. 2014) (per curiam)). But "[i]f the statute criminalizes conduct beyond that covered by the Guidelines—regardless of the defendant's actual conduct," we proceed to step two. *United States v. Tagatac*, 36 F.4th 1000, 1004 (9th Cir. 2022).

At step two, we ask if the overbroad state statute is "divisible." *Martinez-Lopez*, 864 F.3d at 1038. Our certified question arises at this step. "A statute is divisible only when it 'list[s] elements in the alternative, and thereby define[s] multiple crimes.'" *Id.* (alterations in original) (quoting *Mathis v. United States*, 579 U.S. 500, 504–05 (2016)). By contrast, a statute is indivisible if it merely

"describes different ways to prove a single set of elements."
*Tagatac*, 36 F.4th at 1004. Elements are "those
circumstances on which the jury must unanimously agree,"
while means are "those circumstances on which the jury may
disagree yet still convict." *Rendon v. Holder*, 764 F.3d 1077,
1086 (9th Cir. 2014). "[I]f a statute is both overbroad and
indivisible, a prior conviction under that statute will never
qualify as a predicate . . . offense under the federal
sentencing guidelines," and our analysis ends. *Martinez-
Lopez*, 864 F.3d at 1039. If the statute is divisible, we
proceed to step three to apply the "modified categorical
approach." *Id.*

At step three, "we examine judicially noticeable
documents of conviction 'to determine which statutory
phrase was the basis for the conviction.'" *Id.* (quoting
*Descamps v. United States*, 570 U.S. 254, 263 (2013)).
"[T]he prior state conviction may serve as a predicate
offense under the sentencing guidelines" only if "the
defendant pled or was found guilty of the elements
constituting a federal drug trafficking offense." *Martinez-
Lopez*, 864 F.3d at 1039.

## III.  PARTIES' ARGUMENTS

The parties dispute several legal issues, in addition to the
issue that is the subject of this certification order. We will
explain our resolution of these issues as necessary when we
issue our final disposition. Because we resolve the relevant
predicate legal issues in favor of Defendants,[2] the outcome

---

[2] These issues include: (1) whether *United States v. Rodriguez-Gamboa*,
972 F.3d 1148 (9th Cir. 2020), and similar cases conclusively hold that
California's definition of methamphetamine is not broader than the
federal definition and therefore control the outcome of these appeals; and

of this appeal turns on the issue we certify here, which arises at step two of the categorical analysis.

At step two, we must determine whether § 11378 is divisible. The parties agree that under California precedent "each specifically-listed category of controlled substance"— e.g., methamphetamine, cocaine, and heroin—"is an alternative element" for purposes of a conviction under § 11378. "[P]ossession of narcotics under different classifications of the [California] Health and Safety Code may be charged and punished as separate crimes." *People v. Schroeder*, 70 Cal. Rptr. 491, 499 (Ct. App. 1968); *see In re Adams*, 536 P.2d 473, 477 (Cal. 1975) ("simultaneous possession of different types of drugs properly may be multiply punished" (citation modified)). The parties also agree that variations of a given listed substance—e.g., "methamphetamine, its salts, isomers, and salts of its isomers," Cal. Health & Safety Code § 11055(d)(2)—are different "*means* of committing" the same offense. *United States v. Furaha*, 992 F.3d 871, 875 (9th Cir. 2021); *see Adams*, 536 P.2d at 477 ("[T]his rule does not apply if the drugs possessed are *all of one kind, such as various derivatives of the drug opium*." (emphasis added)). Thus, a person who simultaneously possesses methamphetamine and heroin may be charged with two separate crimes, (1) possession of methamphetamine and (2) possession of heroin. But a person who simultaneously possesses two isomers of methamphetamine—e.g., D-methamphetamine and L-methamphetamine[3]—may be charged only for one

---

(2) whether § 11378 is overbroad compared to the federal definition at step one of the categorical analysis.

[3] There are two main isomers of methamphetamine, D-methamphetamine and L-methamphetamine. *See The Low-Down on*

crime, possession of methamphetamine, and the jury need not agree on which particular isomers the defendant possessed to convict.

The parties dispute whether possession of a controlled substance analog is an alternative means of proving possession of the controlled substance of which it is an analog, or whether possession of a controlled substance analog is an alternative element defining a separate crime. Resolution of this issue is dispositive. If the California Supreme Court concludes that the state may prove a § 11378 charge for possession of a specified listed controlled substance (e.g., methamphetamine) by showing the defendant possessed *either* the actual specified listed substance *or* an analog of that substance, then Defendants would prevail. We would conclude that § 11378 is "both overbroad and indivisible" at step two, and "a prior conviction under that statute will never qualify as a predicate . . . offense under the federal sentencing guidelines." *Martinez-Lopez*, 864 F.3d at 1039. But if the California Supreme Court concludes that the state must prove a § 11378 charge for possession of a specified listed controlled substance by showing the defendant possessed that actual substance and not an analog of that substance, then we will affirm the sentences. We would proceed to step three to apply the "modified categorical approach," *id.*, and we would conclude that the Government prevails at that step.

_____

*Methamphetamine Isomers: Prevalence and Pharmacology in Humans*, U. Wisc. Sch. Pharmacy: Barkholtz Rsch. Grp., https://pharmacy.wisc.edu/faculty/barkholtz-research-group/research/the-low-down-on-methamphetamine-isomers-prevalence-and-pharmacology-in-humans/ (last visited Dec. 30, 2025).

We see no clear answer under existing California precedent. We summarize the parties' arguments below.

## A. Defendants' Arguments

Soto and Reid argue that California precedent shows that possession of a controlled substance analog is an alternative means of proving possession of the controlled substance to which it is an analog—i.e., a jury may convict without unanimously agreeing that the defendant possessed the actual listed substance or an analog. Defendants cite both the statutory language and California case law. First, Defendants note that California Health & Safety Code § 11401(a) states that "[a] controlled substance analog shall . . . be treated the same as the controlled substance classified in Section 11054 or 11055 . . . of which it is an analog." They argue that an analog of a controlled substance should therefore be treated as a variety of that substance (like salts and isomers of methamphetamine), rather than as separate substances.

Second, Defendants cite *People v. Becker*, 107 Cal. Rptr. 3d 856 (Ct. App. 2010). In *Becker*, the defendant was charged with possession of "ecstasy." 107 Cal. Rptr. 3d at 858. At the time, ecstasy (or MDMA) was not listed in the California Health and Safety Code as a distinct controlled substance, *id.* at 859, and the state's position on "whether Ecstasy or [MDMA] was a controlled substance . . . or . . . an analog of another controlled substance" was unclear, *id.* at 861. The defendant had argued that "his due process rights were violated because . . . the [charging instrument] alleged only that Ecstasy was a controlled substance, not a

controlled substance analog." *Id.* at 860. The California
Court of Appeal held:

> [F]or due process purposes there was no need
> to allege that Ecstasy was an *analog* of a
> controlled substance as opposed to a
> controlled substance, for purposes of section
> 11378 . . . . The references in count 5 of the
> information to "Ecstasy," "controlled
> substance" and section 11378 fully apprised
> defendant that the prosecution was alleging
> and would seek to prove that Ecstasy was a
> controlled substance for purposes of section
> 11378 . . . .

*Id.* at 860–61. Soto and Reid argue that because
constitutional due process requires that the elements of a
charged crime be stated in a charging instrument, *see
Hamling v. United States*, 418 U.S. 87, 117 (1974) (U.S.
Constitution requires an indictment to "contain[] the
elements of the offense charged"), "the fact that the
California court considered it inconsequential that the
[charging instrument] alleged only a street name, without
alleging whether the substance was a methamphetamine
analog[] or whether it actually contained methamphetamine,
indicates the court did not consider these to be separate
'elements,' but rather mere 'means.'"

The defendant in *Becker* had also argued that "evidence
failed to show that Ecstasy is either a controlled substance or
an analog of a controlled substance." 107 Cal. Rptr. 3d at

859. The California Court of Appeal rejected that argument and explained:

> Based on the investigator's testimony, *the jury could have reasonably concluded that Ecstasy or [MDMA] was (1) a controlled substance itself or (2) a controlled substance analog of methamphetamine.* Thus, substantial evidence supports defendant's conviction ... *whether Ecstasy is a controlled substance itself or a controlled substance analog of methamphetamine.*

*Id.* at 860 (emphasis added). Soto and Reid argue that, in so holding, the California Court of Appeal made clear that "methamphetamine and its analog[s] are interchangeable means of committing a California controlled substance offense, as opposed to separate elements that must be separately charged and proven."

Soto and Reid also cite *People v. Davis*, 303 P.3d 1179 (Cal. 2013), a California Supreme Court case which approvingly cited *Becker* and stated: "Proof that MDMA qualifies as a *controlled substance or analog* is an element of the crimes set out in sections 11377 and 11379." *Davis*, 303 P.3d at 1182 (emphasis added).

Finally, Soto and Reid point to the relevant California jury instruction. The Defendants explain:

> The relevant jury instruction for § 11378, CALCRIM No. 2302, begins with the phrase "[t]he defendant is charged [in Count ___] with possession for sale of _____ <insert type of controlled substance>," and then goes on

to permit the prosecution to prove that charge
by showing that the defendant possessed "an
analog of _____ <insert type of controlled
substance>[.]" *See* CALCRIM No. 2302.

They argue that the jury instruction "on its face . . . invites
the prosecution to charge a 'type of controlled substance'
like methamphetamine, but then prove that
methamphetamine charge with evidence that the defendant
possessed 'an analog[] of' that same 'type of controlled
substance.'" They argue, "That is treating a
methamphetamine analog[] as a means of committing a
methamphetamine offense, not as a distinct controlled
substance offense."

### B.  Government's Arguments

The Government argues that a specific listed controlled
substance and an analog of that substance are alternative
elements defining separate crimes under § 11378—i.e., the
state must prove, and the jury must unanimously agree, that
the defendant possessed *either* the actual listed controlled
substance *or* an analog of that substance.

The Government first notes that "California state law
treats the type of controlled substance as a separate element
in prosecuting relevant drug offenses" and that the California
jury instruction for a charge under § 11378 "requires the jury
to fill in the blank where the controlled substance is to be
identified." *Padilla-Martinez v. Holder*, 770 F.3d 825, 831
n.3 (9th Cir. 2014).  The Government argues that this means,
"If the substance at issue . . . is a controlled substance
analog[], 'the judge must require the jury to name the
specific type of controlled substance and to find whether it
is an analog[] of a listed controlled substance,'" which shows

that "the jury must unanimously agree that a particular controlled substance analog[] is the basis of the defendant's conviction." *Marinelarena v. Garland*, 6 F.4th 975, 977 (9th Cir. 2021).

Next, the Government argues that although California law provides that a controlled substance analog shall "be treated the same as the controlled substance . . . of which it is an analog," Cal. Health & Safety Code § 11401(a), this is only so "for purposes of . . . penalties and punishment," *id.* § 11400; it "does not eliminate or modify the requirement that a jury must unanimously agree about the substance that was possessed." Therefore, the fact that that California's definition of methamphetamine, Cal. Health & Safety Code § 11055(d)(2), "*does not* mention analog[s], . . . indicates they are not treated the same as 'salts,' 'isomers,' or 'derivates.'"

Finally, the Government argues for a different reading of *Becker*. As explained, *Becker* held that "the jury could have reasonably concluded that Ecstasy or [MDMA] was (1) a controlled substance itself or (2) a controlled substance analog of methamphetamine." 107 Cal. Rptr. 3d at 860. The Government argues even though the *Becker* jury did not need to "agree on the legal '*theory*' underlying [the defendant's] guilt, the indictment alleged and the jury unanimously found—as a factual matter—that the *drug* Becker possessed was Ecstasy," not methamphetamine or a methamphetamine analog. That fact is significant, the Government argues, because "[u]nder California law, jurors must agree on . . . what drug did the defendant possess," and not "the legal theory—whether that drug is a controlled substance or a controlled substance analog[]."

\*          \*          \*

In our view, both sides make sensible arguments. We see no clear resolution to this dispositive question under existing California precedent. We therefore respectfully ask for guidance from the California Supreme Court.

## IV.   CERTIFIED QUESTION

Accordingly, we certify the following question to the California Supreme Court:

> When a defendant is charged with possession of a listed controlled substance under California Health & Safety Code § 11378, must the state prove, and must the jury unanimously agree, that the defendant possessed the actual listed controlled substance, and not an analog of that substance as defined under California Health & Safety Code § 11401? Or may the jury convict if it finds the state has proven the defendant possessed *either* the actual controlled substance *or* an analog of that substance, without unanimous agreement as to which?

We will accept the decision of the California Supreme Court as controlling. Cal. R. Ct. 8.548(b)(2). We do not intend our framing of this question to restrict the California Supreme Court's consideration of any issues that it determines are relevant. *See* Cal. R. Ct. 8.548(f)(5). Should the California Supreme Court decide to consider the certified question, it may, in its discretion, reformulate the question.

*See Broad v. Mannesmann Anlagenbau AG*, 196 F.3d 1075, 1076 (9th Cir. 1999).

## V.  COUNSEL INFORMATION

The names and addresses of counsel or the parties, as required by Cal. R. Ct. 8.548(b)(1), are as follows:

Counsel for Defendant Anthony Valentino Soto:

Sonam A. H. Henderson
Office of the Federal Public Defender
321 E 2nd Street
Los Angeles, CA 90012

Counsel for Defendant Stephen Reid:

Holt Ortiz Alden
Office of the Federal Public Defender
321 E 2nd Street
Los Angeles, CA 90012

Counsel for the United States:

Rajesh Ram Srinivasan
Office of the U.S. Attorney
312 N Spring Street, Suite 1200
Los Angeles, CA 90012

## VI.  CONCLUSION

The Clerk is directed to forward an original and ten certified copies of this certification order, under official seal, to the California Supreme Court.  *See* Cal. R. Ct. 8.548(d). The Clerk is also directed to transmit copies of all relevant briefs, as well as any additional record materials requested by the California Supreme Court.  *See* Cal. R. Ct. 8.548(c).

Submission of this appeal for decision is vacated and deferred pending the California Supreme Court's final response to this certification order. The Clerk is directed to administratively close this docket, pending further order.

The parties shall notify the Clerk of this court within fourteen days of the California Supreme Court's acceptance or rejection of certification, and again, if certification is accepted, within fourteen days of the California Supreme Court's issuance of a decision.

**QUESTION CERTIFIED; PROCEEDINGS STAYED.**